The fourth district appellate court of the state of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Our first case this afternoon is 4-24-1205, People v. Grampsas. And I'd like counsel for the appellant, please state your name, sir. My name is Douglas Johnson. Thank you. Counsel for the appellate, please state your name. My name is David Manchin. Thank you, counsel. Mr. Johnson, on behalf of the defendant, you may begin your argument at this time. Thank you, Justice. May it please the court. Counsel, my name is Douglas Johnson and I represent defendant appellant Anthony Grampsas. Mr. Grampsas is currently serving his sentence pursuant to his first degree murder conviction. This case has been before you on one previous occasion on direct appeal. And now it comes before you after the dismissal of his petition at the second stage of the act. And we are asking that that dismissal be reversed pursuant to your de novo review. I'd like to address first, the first argument in our brief, wherein we state the issue, whether Mr. Grampsas' constitutional right to due process a fair trial and to present a defense was violated. When the state successfully barred the testimony of Mr. Fanning at Mr. Grampsas' trial, but then turned around and subsequently used that testimony, presented it to the jury and Mr. Grampsas' co-defendant Mr. Bruce at Mr. Bruce's trial. I have a question about that, counsel, that I wanna ask you. With regard to the testimony of the defendant's trial, the issue there was whether Fanning's testimony in which others essentially incriminated themselves was going to be admissible. And the only rule of evidence that applies is rule 804, which is the hearsay exceptions and it says the following are not excluded by the hearsay rule if the declarant is unavailable as a witness. And then down to 804 B3, dealing with statements against interest, the rule says that a statement tending to expose the declarant to criminal liability and offered in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. I know you're familiar with this in the Supreme Court of Illinois case preceding it, Tenney, which is based upon Chambers versus Mississippi and all that, this rule seems to be following it. And in order for a statement to be admissible like the statement you're talking about, it had to be admissible, the trustworthiness question had to be shown on the rule 804 and in this court's initial appeal, we concluded that Fanning's statement regarding, Fanning's testimony regarding statements made by Bruce was properly excluded by the trial court because that testimony lacked trustworthiness under 804 B3. In contrast, 804 B3, there's rule 801, which is the basis for the admission of Bruce's testimony, Fanning's testimony in Bruce's trial where Fanning was testifying about what Bruce said and 804 D says statements which are not hearsay, statement is not hearsay if D2 says the statement is offered against the party and is the party's own statement. I mentioned for 804 has requirements of trustworthiness, which must be shown before a statement can be admitted in the trial court in this court said there was no require that the Fanning's testimony didn't meet that. But with regard to Bruce's trial, where it was his statement as a party opponent, what trustworthiness requirement did the state need to show before Bruce's Fanning's testimony about what Bruce said at Bruce's trial could be admitted? So the question is about, in this you're talking referring to Bruce's trial. Yes. So I think the issue there and what they showed, what were what they, I think there are different ways to show trustworthiness or reliability, but at the Bruce trial, I believe they examined the chambers factors, declaration against interest made to a close acquaintance, spontaneous and unavailability or availability for cross-examination. Though the chambers factors of course are not, are just guidelines and- Maybe I'm not being clear. When Bruce was on trial, Fanning's testimony consisted in part of allegedly incriminating statements made by Bruce. Isn't that right? Correct. Okay, now Bruce was a party in that case and under 804 D1, it says a statement by a party opponent is admissible. It's not hearsay. If it's offered against a party and it's the party's own statement. So when I want to go back is, there's no trustworthiness requirement at all. Is there for 801 D2 statement? Your honor, I believe there is, the state can't present testimony that it believes is unreliable or untrustworthy. We can't- That's not my question counsel. My question is, am I correct that there is no trustworthiness requirement? We talked about the trustworthiness requirement required for a hearsay exception statement against interest under 804. The Teddy case talks about it, Chambers v. Mississippi. Is there any similar requirement of trustworthiness that has to be shown before the state at a trial against Bruce could introduce testimony of what Bruce said? There may not, there is not. Okay. Isn't that a fundamental difference between these two statements? I do not believe so, your honor. I believe our argument, Tenney makes it very clear and I'll quote the line they said. Our argument is that when the state presented the testimony in Bruce's trial, then it would be anomalous for the state now to oppose, I'm talking about the Tenney holding, but the quote is, it would be anomalous for the state to now oppose admission of Lane's hearsay statement for Tenney because the state used the same evidence to convict Lane. It's the same thing here. How can they use Fanning's testimony, they're presenting it as true, they're not thinking that Bruce is lying, or Fanning is lying. So they present it and the jury decides, do we believe it or not? How can they use it, not allow Gramps's to use it? Well, because this court, the trial court agreed and this court, so the trial court was right, that in the defendant's trial, what we're talking about was a statement under 804 D, where it was a statement intending to expose the declarant to criminal liability. And you had to show trustworthiness and it wasn't shown. There was no similar requirement as far as trustworthiness in Bruce's trial. You just conceded as much. At Bruce's trial, anything Bruce said as a party is admissible, isn't that correct? Admission of party opponent, yes. Okay, so why should the fact that Fanning's testimony about what Bruce said at Bruce's trial is admissible, have any bearing at all on Fanning's testimony at defendant's trial about what Bruce may have said when it's a matter where it's trying to expose the declarant, Bruce, to criminal liability in a criminal case where he's not the defendant? Because the issues are different. We are not arguing 804 3B here. We are arguing that there is a constitutional violation where the state presents evidence as reliable in one trial and turns around and says that evidence is unreliable and not worthy. In Gramsci's trial, the state was putting it in primature on the testimony at Bruce's trial for Fanning. So if you look at the cases that- What do you say the state is putting in some primature on it? The state called this guy Fanning, who from all practical purposes appears to be just another miserable moat, who is gonna testify about what Bruce said. So what does that mean? The state by putting Fanning on to testify about what Bruce said, and suddenly they're vouching for him, he's gonna be the next president of the Rotary Club? What are you referring to here? They're vouching for him that he, Fanning, as to this conversation, which is the same evidence, where it's the same thing offered in, same conversation, same thing that Bruce said, they're vouching this is true. We believe that Fanning is telling the truth. Otherwise they're presenting perjury if they don't believe he's telling the truth. And then we look at Tenney, the Rivera case. If a confession is sturdy enough for the state to use in its own case, if it is the sort that the prosecutors regularly use to convict defendants, the defendants are entitled to use it. And if we look at- I wanna ask you about another question, in which, going to your brief, probably about Harris and how he wasn't permitted to testify, it's now newly discovered evidence. The trial court concluded that Harris's affidavit was not newly discovered evidence, and this is what you write, page 28 of your brief. Court's reasoning is flawed and its conclusion is incorrect. First, the court found Harris was unavailable to testify, but this is incorrect. Was available to testify is incorrect. Harris states in his affidavit, he had not testified at Anthony's trial out of fear that he would be prosecuted for the murder. Harris added that he was only now coming forward after the trial and appeal because he believes coming forward now is the right thing to do. In other words, Harris previously invoked his Fifth Amendment rights as himself in the terminations. The reason I quoted that is because I'm looking at an order entered June 29, 2020, just before trial started in this case, in which Judge Droshefsky granted the state's application for a grant of use immunity with regard to witness Coby, and said this, with this, Coby Harris is ordered and directed to answer questions, produce such evidence that is relevant and preventive on the issues set forth in his trial. And with this, Coby shall be granted immunity from prosecution in a criminal case as to any information directly or indirectly derived from the production of evidence of the witness. Plus he was there in court when the judge said that to him, told him he was immune, told him he couldn't be prosecuted, asked the defense attorney in the state, do you have any clarification needed for any of this? And they all said, no, that's fine. No one called him to testify, but on what basis are you claiming he was unavailable because he had a Fifth Amendment right? Well, that order was not cited in the state's brief. So I must say, I don't know if I have seen it. I would say that- Well, it's your argument. This is part of the record. What do you mean it wasn't cited in the state's brief? I'm not holding it here in my hands, counsel. Here's the written order entered by the court giving him immunity at trial. So what's the argument that somehow he was fearing prosecution if he testifies? The argument is that in the argument, and I'd have to see that order and go over the details, but I will tell you the argument in the brief is that he feared prosecution and he feared prosecution very reasonably. He was there that night. He was with Grampsus. I submit to you, he played the exact same role. He was dropped off and did not know there was a plan, did not know what Hairston and Bruce were going to do. And so we're bleeding now into the new evidence argument, but I didn't know if you wanted to go back to Tenney or Gray. The state argument- But I wanted to give you an opportunity to explain in the face of this order, which the court entered, which is on, this is on pages 222 of the record where the hearing was conducted in June 29 for Judge Rusevsky and he talked about it all and how this works. What I told you, Mr. Harris, the relationship testimony, should he fail to appear, then he could be arrested for failing to appear, but court explains you cannot claim self-incrimination any longer because you have use immunity. Yet you are arguing somehow that he's able to claim use immunity based upon what I just read to you from your brief. How do you square these two? Well, I submit, again, from the brief, the argument is that he would, I think we're talking about, was he unavailable? And I think you're saying he wasn't, right. Well, you're saying he was unavailable because your claim is he had fit memory protections and he didn't wanna testify according to his affidavit, right? Absolutely. And he's supposed to understand, I think you referred earlier to just another miserable human being or something like that. He's supposed to understand the idea of use immunity and figure that all out. I mean- Well, the court explained it to him in open court, by the way. I mean, it's not something where he got a letter in the mail. Okay, I submit to you, there are a lot of people who wouldn't understand what use immunity is. The fact is he submitted an affidavit, he filled in the gaps and he said everything that happened. And if he feared prosecution, whether he was given, told by this world, he doesn't understand in this courtroom that he had use immunity. But the question isn't what he thought, the question is, was this available testimony so as to meet the standards? Is that required? It has to be newly available. It wasn't available before. If he's given use immunity, wasn't it available at trial? He still reasonably feared prosecution. So that meets the standard of what's required to show not available testimony. Well, I think we get into that and due diligence to find him and things like that. What's he going to say? Was he investigated? We don't know any of those things. Use immunity orders at page 507 of the Chapman Law Record if you want to make a note. I've taken up a lot of your time. I want to give you an opportunity to address the other matters. And you may be so at this time. Thank you, Your Honor. Again, I go back to Tenney and I don't know how the state can get around the language cited therein. I don't know how it can get around the language in Gray. This court's decision in Gray. Use it in one court is reliable, presented in another one is not. The state tries to distinguish Tenney. It says, the Tenney holding was an abuse of discretion to exclude the statement of a co-defendant, exculpating defendant when the co-defendant statement had been used against the co-defendant at his trial in which he was cross-examined by the state regarding the portions of his statement that exculpated the defendant. That is an incorrect summary of what happened in Tenney. Because Tenney, it is clear from the Tenney decision, Lane himself did not testify. His admissions, which exculpated the defendant, were admitted through witness mull. And so that would be the- Counsel, this court has already held that Fanning's testimony didn't meet the standards of Chambers versus Mississippi. Isn't that race judicata? Absolutely not. This is a different issue. Race judicata, there can be no race judicata and no waiver here because the testimony of the witness, Fanning, from Bruce's trial was not in the record on appeal. So there's just absolutely no way that it was not known. It happened after Gray's trial. And there is no burden on the defendant to know, oh, what did they do? He had no reason to know that they were gonna present this person that they barred. And so it was a different issue, an evidentiary issue, and now it's a constitutional issue since we supplemented the record on post-conviction with the testimony of Mr. Fanning. And so now if you look at this case, not waived, no race judicata, the state finally argues, well, he wasn't prejudiced. Gramps's wasn't prejudiced by this constitutional violation where they used barred as unreliable even though it was reliable in the Bruce trial. They say he wasn't prejudiced because Fanning didn't address Newby's party and what happened there. I submit to you, Fanning didn't need to. Fanning made it very clear. He said, Anthony, I talked to Bruce. Bruce said, Anthony was not there with us and he did not know what we were going to do. How can we have more powerful? And that's what he said basically in Bruce's trial. So how can we allow that? Then the state says, well, and also remember, Anthony provided the car. Well, if Anthony let somebody borrow his car, then that's okay. If he didn't know what they were gonna do and Fanning has said he didn't know what they were gonna do, then it's okay to provide the car. And then they say, well, Anthony destroyed evidence. This is the second to last thing they say. Anthony destroyed evidence when he changed the tires on the car. Well, I must point out that Anthony did not. There's no evidence that it was Anthony. There's an inference you could draw that Anthony did it, but you could draw the same inference now that what we know from Fanning, you could draw the same inference that it was Hairston or Bruce because they were the ones that were there. They were the ones that did it. They had the motivation to change those tires. And finally, the last piece of evidence, the state says, well, Anthony admitted it. And I submit to you, Anthony did not admit it. In the hours upon hours upon hours of recorded jail calls, the state picks one sentence out of context from a discussion Anthony had with a girl. I don't know if it's a girlfriend. I don't know if it's a girl. We just know it's a girl. And he's talking to her. And at one point he says, I just happened to be there whenever it went down. And from that, that's the state, I think they think that's their strongest evidence. And I submit that is one line taken out of context and it is not when it went down, it's whenever it went down. And more importantly, the context of that conversation is Anthony saying to this girl, I don't know how I got into this mess. And her saying, well, when you get out, and they discussed since he's innocent, he's gonna get out. And she says, you just better not be in any hot stuff I don't know what you all say, but it was an expletive, but you just better not be in any hot stuff. Because of all the questions I ask you, I'll give you another two minutes. You just better not be in any hot stuff when you get out. And Anthony says, I wasn't in any hot stuff then. So if you take that whole conversation in its context, it shows that there's just so little evidence here. And now we have evidence from Fanning saying exactly what the defense theory was. He didn't know what they were gonna do. In the closing 90 seconds or so, I just wanna point two things out. One, the case says that this cause is remanded. It should be for a limited remand about the state's motivation for the order of the trials. I submit that is not necessary. It should be an evidentiary hearing. Secondly, I think it's very important to look at the timeline in this case, because if you look at the Salvation Army camera at 4.31 a.m., the car is spotted. If the car continued past the Harris home and didn't drop anybody off, then at 4.30, you would see that car on the next camera a block and a half down the road, but you don't see the car until 4.38. Therefore, this fits perfectly also with what Fanning is saying. Harris dropped off, Gramps has dropped off. And then if you put it with Tornowski's testimony, it fits perfectly too. She said, I know I heard him before my alarm went off. Anthony's accounted for in that car from the time he left the party at four until 4.31. He had to be at that home. She heard him talking. If we put all that evidence together and now add Fanning's testimony, just let a jury hear it. They can decide if he's telling the truth or not, because Anthony should not, this gamesmanship is not allowed under Tenney, Gray, Pettijohn, Rivera, or Lettrich. Thank you very much. Thank you, counsel. Mr. Manchin, may I offer the state to remake your argument at this time? Thank you, your honors. May it please the court, counsel. The trial court's decision to dismiss the defendant's post-conviction petition was proper. The claim regarding the statements of Fanning was waived. He could have raised it at trial. He could have, by due diligence, he would have known that this testimony was admitted at the co-defendant's trial. It could have been raised post-trial, and it could have been raised on direct appeal because this court would have the ability to take judicial notice of the testimony at the co-defendant's trial, so that this theory that if the state uses the statement against a declarant, it is automatically admissible on behalf of a defendant, could have been raised on direct appeal, and since it wasn't, it's been waived, and it's also res judicata because the issue of the admissibility of Fanning's statement was directly addressed. Defendant is simply trying to change his theory in his post-conviction petition, and you cannot avoid res judicata by simply changing your theory or your emphasis. So the claim regarding Fanning's testimony was either waived or res judicata. The trustworthiness requirements, neither, none of the cases defendant cites as states a outright per se rule that says if a person, individual makes a statement that implicates himself but exculpates the defendant, that is automatically admissible at defendant's trial if it's used against the declarant. Instead, they used the abuse of discretion standard using the admission against the declarant as one of the factors, and I note that in both Gray and Tenney, the courts found that all of the Crawford facts, all the factors required for admission of a statement against interest were present other than the availability. They said they were timely, they were corroborated, they had indicia of reliability in the statements themselves. Therefore, it was improper to exclude the evidence at the defendant's trial when it had been admitted at the co-defendant's trial. We do not have any of that here. This court expressly found a direct appeal that none of the factors required for admission of the evidence was present and that it was completely unreliable as the defendant. The fact that it was used against the person that said it doesn't change that fact that it is completely unreliable. The defendant seems to suggest that any evidence that came against the defendant is therefore admissible at the defendant's trial if the defendant wants to present it. There are certain things that would be reliable as to one defendant, but not be completely unreliable or even have no irrelevant as to a different defendant. So to say just because the state used a statement against the co-defendant, the defendant has an absolute right to present it to his defense should not be adopted. And that was not the rule adopted by the Supreme Court in Tenney. They said under the unique circumstances of that case, it was an abuse of discretion to exclude the statement that met all of the criteria for admission as a statement of a statement against interest. So there was no error in excluding in the trial court's ruling as to the admissibility as the ruling as a fanning. And I agree that if the court's ruling in that as a fanning's testimony was incorrect, this does go back for a full evidence hearing on that issue. But the questions are going to be, not only what was the timeline, but exactly what it is that Fanning is going to testify because we now have three different versions of what he's going to say or might say, first at the defendant's trial where he made the offer of proof as to Fanning, then in Fanning's statement, and then in the testimony at Bruce's trial. All of them are different. What is he going to testify to? So I agree that if the court erred in dismissing, it goes back for evidence hearing on this as to the timing of the trials, the state's quote unquote intent to prevent defendant from presenting this by choosing the order of trials and to establish exactly what it was that Fanning was going to testify. We also have the complication that Fanning claimed he was told by Bruce and Hairston. So anything he was told by Hairston is excluded even under the defendant's theory because the state never used Hairston's statement against Hairston because he died, what, a few days after he allegedly made the statements to Fanning. So we had to determine at an evidence hearing, what was he told by Bruce as opposed to what was he told by Fanning, I mean by Hairston, to determine just how was the court correct or not. But I submit that the court did not err because the defendant waived this issue. It was race judicata and on the merits, the trial court, it was not an abuse of discretion to exclude this, even if it was admitted under at Bruce's trial, because the standards for admit, as Justice Segman noticed, the standards for admitting your own statement against you and entering a statement of another as a statement of interest on behalf of the defendant are completely different. And there is no vouching or trustworthiness determination ever made that would say that Fanning was in fact reliable when there is no trustworthiness requirement for the admission of his testimony against Bruce. So Mr. Manchin, good afternoon. On another issue here, the one Justice Steigman referred to earlier with respect to actual innocence and Harris's affidavit, how do you respond to opposing counsel's argument that Harris couldn't have been held to understand that he had use immunity and we should really take that into consideration, at least that's what I understand he's arguing when we look at the affidavit where he said he feared prosecution? Well, the simple answer is ignorance of the law is not an excuse. And I'm sorry I missed that order when I was reading this huge record because the fact that he was given immunity does in fact show that he was available. His mistaken belief that he could be held kind of accountable does not make him unavailable. The defendant makes no showing that he subpoenaed the witness that he contacted him before trial to ask, are you willing to testify in light of the order of immunity? And his ignorance of the law as to what that immunity means does not make him unavailable. He was a witness that was known, he was listed by everybody and defendant made absolutely no attempt to call him as he haven't claimed the fifth and then to be told, no, you don't have the fifth. So that this was simply not newly discovered and respect to Tarnowski, one of the other newly discovered witnesses. Her affidavit is simply that after reading my trial testimony, I suddenly remembered the exact time I heard the defendant in the house. And if I had been asked the right question at the first trial, I would have been able to provide that information. That is not newly discovered evidence. That is evidence that could have by the witness's own statement been covered and disclosed at the first trial when she testified at the trial. So there's no error with respect to either Kobe Harris or Tony Tarnowski as far as the newly discovered evidence. And with the respect to Kamadri King, again, I think the court was correct in finding that that was not newly discovered evidence that would, excuse me, change the results of the trial because according to King's affidavit, he was testifying to what he was told and he had no, as I read the thing, he had no personal knowledge of anything that happened that night. King's testimony would not have been admissible under the Statements Against Interest if it ever was offered. Plus we don't know when King was discovered, how he was discovered, why he wasn't discovered earlier. So no showing the due diligence on the part of the defendant to present him. So court was correct in rejecting the defendant's claim of newly discovered evidence. If there are no further questions. I see none, counsel. Thank you for your arguments. Mr. Johnson, may I offer the defendant, you may have a rebuttal argument at this time. Thank you. I think if I heard correctly, counsel stated that this claim could have been raised at trial. I don't know how that could have been done. At Mr. Gramsci's trial, Mr. Bruce's trial had not taken place yet. So I simply say there's no waiver there. It could not have been raised at Mr. Gramsci's trial. Could it have been raised on appeal? It could not have been raised on appeal. We needed to add, we needed to obtain Mr. Fanning's testimony from the Bruce trial. What prevented you from doing that? Not knowing that what had happened. I don't think counsel had a burden to track or the defendant himself sitting in the penitentiary had to track what went on at Bruce's trial to say, oh, they put Fanning on there after they barred him from my trial. So it was simply not in the record on appeal. And the state suggests, well, it could have been put in the post-trial motion. That's a heavy burden on a defendant. Now you gotta know what's going on in other cases if you want to get everything in there. This is perfect, tailor-made for a post-conviction petition. Well, in terms of what's going on, how does Mr. Harris assert a Fifth Amendment claim when nobody ever asked him anything? I don't care what his affidavit says. Was he called at trial? No. No. Did either side try to call him in trial? No. Is there any evidence in the record that he tried to evade service? No. He was never asked a question. How does he get to assert Fifth Amendment? He was, if I were Mr. Harris, Mr. Harris was, everybody agrees, was with Mr. Gramsci, Mr. Harrison, and Mr. Bruce that night. I submit to you, he was just as involved as Mr. Gramsci. He's gonna be scared of prosecution no matter what all these people are talking to him about, which we don't know from an incomplete record. The fact is what he did is he came forward later because he saw what had happened, he knew an injustice had been done, and he's gonna, wait a minute, I was sitting with Gramsci at my house when this all happened. But he's scared to death because I don't think it's obvious that a person in that situation would think, I'm gonna get pulled into this. And so those are the reasons. But to say also what I was going to say in rebuttal to what counsel said, he said that he did not explain, nor did this court, how do you get around the language? I won't quote it again due to limited time, but how do you get around the language? It was shocking to all senses of justice from this court to allow this kind of thing to happen, to allow, yes, there was a chamber's discussion in those cases, but I submit to you, it wasn't mandatory. Because at the end of those discussions, it said it's shocking to senses of justice to allow it in one of the evidence, the same evidence, and it's the same evidence here. I would agree with the state. We aren't looking for a per se rule. Yes, there would be things that are said in the different trials that are irrelevant. But what matters here is that it is the same exact discussion. Fanning is talking about what he testified to at Bruce's trial. It is simple, one conversation, and it goes to the heart of the case. We aren't simply just changing theories. This is a constitutional issue. Certainly, but no per se rule, just this is what Fanning, it is the same thing in both cases. Counsel also didn't talk about, I think appropriately, prejudice. This constitutional violation obviously resulted in prejudice. A fair finder of fact should hear. And then Fanning could be cross-examined. And I submit, counsel said, what is Fanning gonna say? He's told three different stories. No, he hasn't. I was waiting to hear what are these three different stories he told? The stories he told were he's sitting around with people with Hairston, and they're all talking, and these guys, Hairston and Bruce, are saying, we did it. And Anthony Gramsci is there, and no one says, hey, Anthony, weren't you there? What did Anthony do? No one. It doesn't even come up. People are talking. And Bruce says, here's what he says, and here's what a jury should hear when they're trying to decide, is Anthony guilty because he said he made a statement to a girl in the county in hundreds of hours of talk, or whatever it was? No, they should hear that Bruce said, it was me. We remembered that Dover looked like that Dover had some drugs. And we went by his house, and it was only at that time that I decided, you know what? Let it look like anybody's home. We should steal his drugs. So we went in, and Hairston got in a fight with him, and shot him and killed him. Hairston and Bruce. And just like Gramsci said, I didn't know what they were gonna do. That's huge evidence, and it was presented at, the same thing was presented in the very similar, the proffer at Gramsci's trial, the testimony of Bruce's trial. It is a manifest injustice that the testimony was fired from Anthony's trial, and the constitution demands that he, we respectfully request that Mr. Gramsci's case be remanded for an evidentiary hearing. Thank you, counsel. Your time is up. The court will take this mandatory advisement and issue a decision in due course, and will now stand in recess.